IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDERSON JOSE COUTINHO-SILVA | : | No. 10-002 |

### MEMORANDUM

PRATTER, J.                                                                                               AUGUST 15, 2022

Anderson Jose Coutinho-Silva seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), for a variety of reasons. But none of his asserted reasons are "extraordinary and compelling" and so do not warrant compassionate release. Therefore, the Court denies his motions.

### BACKGROUND

#### I. Mr. Coutinho-Silva's Motions for Compassionate Release

On October 8, 2009, Mr. Coutinho Silva robbed the Supreme Pizza and Bakery in Northeast Philadelphia at gunpoint. He walked in, pointed a loaded semiautomatic handgun at the store employee operating the register, and demanded that the employee give him the money in that register. As this was taking place, a customer in the store confronted Mr. Coutinho-Silva, prompting Mr. Coutinho-Silva to rip a gold chain from the customer's neck. As the employee struggled to open the cash register, this customer then threw a chair at Mr. Coutinho-Silva; Mr. Coutinho-Silva shot twice at the customer, striking him once in the chest. Though admitted in critical condition, the customer survived his gunshot wounds.

Mr. Coutinho-Silva pled guilty to one count of robbery that interferes with interstate commerce, using a firearm during and in relation to a crime of violence, and being an alien in possession of a firearm. 18 U.S.C. §§ 1951(a), 924(c), 922(g)(5)(A). The Court sentenced him to

1

207 months of imprisonment, five years of supervised release, a $1,000 fine, and a $300 special assessment ($100 for each of the three counts). At the time of his offense, Mr. Coutinho-Silva was also on state probation, having been convicted of burglary in the Philadelphia Court of Common Pleas.

Mr. Coutinho-Silva is currently serving his sentence at the United States Prison Florence ADMAX ("USP Florence ADMAX") with an anticipated release date of September 25, 2025. At the time of his first motion for compassionate release, he had served approximately 145 months and had credit for good time of approximately 5 months, leading to approximately 150 months served out of his 207-month sentence.

At present, Mr. Coutinho-Silva has filed five *pro se* motions for compassionate release. Doc. Nos. 46, 63, 71, 74, 75. In these motions, Mr. Coutinho-Silva suggests a few different theories as to why he has demonstrated an "extraordinary and compelling" reason for his release. The Government has filed a response in opposition to only one of these motions. From the Court's review of Mr. Coutinho-Silva's motions, it appears that Mr. Coutinho-Silva only properly exhausted one of his five motions. *See* Doc. No. 75, at ECF 4.

## II. The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 8, 2022). The BOP limits contact with outside visitors, restricts inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an incoming inmate tests positive or presents symptoms, the BOP immediately medically isolates that inmate, while incoming inmates who are asymptomatic and negative are placed in quarantine for at least 14 days. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those

who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates, including those at USP Florence ADMAX. *COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (Aug. 8, 2022). Mr. Coutinho-Silva is presently imprisoned at USP Florence ADMAX, which houses approximately 344 total inmates. *USP Florence-ADMAX*, Bureau of Prisons, https://www.bop.gov/locations/institutions/flm/ (last visited Aug. 8, 2022). As of August 2022, there had been 65 inmates and 116 staff members who had recovered from COVID-19, no inmate had died of COVID-19, and there are presently 9 reported active staff cases of COVID-19 at USP Florence ADMAX. Tbl. *USP Florence ADMAX*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 3, 2022).

## LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court. 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." *Id.* § 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1), *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances.

3

U.S.S.G. § 1B1.13 app. n. 1.[1] Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

### I. Mr. Coutinho-Silva Has Not Properly Exhausted His Administrative Remedies

At the outset, the Court must deny several of Mr. Coutinho-Silva's motions for failure to comply with the exhaustion requirement. That is because the Third Circuit Court of Appeals has required "strict compliance" with the exhaustion requirement in § 3582(c)(1)(A). *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Whether or not this rule is jurisdictional, as some courts have found, or a claim-processing rule, as others have found, it remains a threshold requirement of "critical[] importance."[2] *Id.*; *see United States v. Cruz*, 455 F. Supp. 3d 154, 157 (M.D. Pa. 2020) ("[S]ince [the defendant] has not yet presented his request for compassionate release to the BOP, it must be dismissed for lack of jurisdiction."); *United States v. Greenlove*, 469 F. Supp. 3d 341, 349 (M.D. Pa. 2020) ("[T]he court cannot waive Section 3582(c)(1)(A)'s exhaustion requirement because it is jurisdictional"). *But see, e.g., United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) (explaining the 30-day exhaustion

---

[1] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

[2] In a recent unpublished opinion, however, the Court of Appeals for the Third Circuit appears to have backed away from this position, permitting a motion for compassionate release to be considered after the Government waived the exhaustion requirement. *See United States v. Canlas*, No. 22-1117, 2022 WL 2447108, at *1 n.1 (3d Cir. July 6, 2022) (per curiam). Still, unpublished opinions are not binding precedent whereas published opinions are binding on this Court. *See, e.g., United States v. James*, 928 F.3d 247, 254 n.5 (3d Cir. 2019) (explaining that two unpublished opinions of the Third Circuit do not have "any precedential effect" (citations omitted)).

4

requirement is a mandatory "non-jurisdictional claim-processing rule"); *United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (similar).

Here, the Government concedes that at least one of Mr. Coutinho-Silva's motions, Doc. No. 63, is not properly exhausted, but argues that the exhaustion requirement is not jurisdictional and, thus, attempts to waive it. Doc. No. 66, at 14 n.2. But the Government has not explained how or why the Court should waive this requirement given the Third Circuit's clear explanation that the exhaustion requirement acts as "a glaring roadblock" to motions for compassionate release. *Raia*, 954 F.3d at 597.

Some of Mr. Coutinho-Silva's other motions for compassionate release appear to suffer from the same defect. *See, e.g.*, Doc. No. 71 (attaching complaints and responses to them explicitly stating that they have not been exhausted). Still others appear to be properly exhausted. *See, e.g.*, Doc. No. 75 (attaching letters from the warden denying his request). The Court will not *resolve* on their merits those motions for compassionate release where Mr. Coutinho-Silva has not demonstrated that he has fully exhausted his administrative rights, but it will *consider* the merits of each motion, regardless of exhaustion, in the hopes that this may provide some clarity to Mr. Coutinho-Silva, especially in regard to his motion for compassionate release on the basis that his sentence is unconstitutional.

Moving forward, the Court reminds Mr. Coutinho-Silva that he is *required* to properly exhaust any motion for compassionate release before bringing it in front of a court, a requirement the Third Circuit Court of Appeals has explained must be followed with "strict compliance" given the "critical importance" of maintaining a "safe and healthy prison environment." *Raia*, 954 F.3d at 597.

5

## II. Mr. Coutinho-Silva Has Not Presented Any Extraordinary and Compelling Reason for his Release

Throughout his numerous motions, exhausted or unexhausted, Mr. Coutinho-Silva presents several theories as to why he has demonstrated an "extraordinary and compelling" reason for his release:

- His desire to return home to Brazil to be with his family, especially his elderly parents, one of whom is suffering from various health problems, Doc. No. 75;
- His completion of a large portion of his sentence, Doc. No. 75;
- Intervening caselaw has rendered his mandatory minimum sentence under 18 U.S.C. § 924(c) unconstitutional, Doc. No. 46;
- His generalized fear of the COVID-19 pandemic and becoming infected with COVID-19, Doc. No. 63; and
- His claim that he is being denied proper medical attention for his allergies, low back pain, and hemorrhoids, Doc. No. 71, at 1–2.

The Court finds that none of Mr. Coutinho-Silva's asserted reasons in his fully exhausted motions are "extraordinary and compelling," and neither are those assertions made by Mr. Coutinho-Silva in motions are not administratively exhausted. Besides, even if the Court were to find that a fully exhausted motion adequately asserted extraordinary and compelling reasons, the sentencing factors counsel against his early release.

### A. Mr. Coutinho-Silva's Family Situation Is Not an Extraordinary and Compelling Reason for His Release

In his single motion that appears to have met the § 3582(c)(1)(A) exhaustion requirement, Mr. Coutinho-Silva explains his desire to return to Brazil to see and be with his family, especially his stepmother, who he reports is 80 years old, and his father, who he reports is 85 years old and has suffered two heart attacks.

It is true that family circumstances may present an "extraordinary and compelling" reason for compassionate release. The sentencing guidelines note two such potential circumstances: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" and (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 app. n. 1(C). But, quite plainly, neither of those scenarios applies here.

Still, the sentencing guidelines leave open the possibility that there may be circumstances "other than, or in combination with" any of the enumerated "extraordinary and compelling" reasons. *Id.* app. n. 1(D). But courts "in this District have yet to find care for elderly or ill parents [rises] to the level of extraordinary and compelling circumstances warranting release." *United States v. Moore*, No. 14-cr-209-2, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020) (collecting cases). That is especially true when, as is the case here, Mr. Coutinho-Silva does not suggest that he is the "sole individual capable of caring for" his parents. *Id.*; *accord United States v. Williams*, No. 11-cr-223-1, 2020 WL 4756738, at *5 (E.D. Pa. Aug. 17, 2020).

Of course, nearly every person incarcerated wishes to return home and see his or her family. But if courts were to grant compassionate release on this basis alone, nearly every person incarcerated would also be eligible for release. Thus, while the Court understands Mr. Coutinho-Silva's desire, it is not an "extraordinary and compelling" reason for his early release.

### B. **Mr. Coutinho-Silva's Time Served Is Not an Extraordinary and Compelling Reason for His Release**

Second, Mr. Coutinho-Silva argues in the same properly exhausted motion that he has served a large portion of his sentence. And it is true that, with his projected release date of September 25, 2025, he has about three years remaining of his approximately 17-year sentence. But that is not independently an "extraordinary and compelling" reason to grant compassionate

7

release. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020). Instead, the Court may consider Mr. Coutinho-Silva's remaining sentence as part of its assessment of the sentencing factors that it must consider *if* a prisoner has already demonstrated an "extraordinary and compelling" reason for compassionate release. 18 U.S.C. §§ 3582(c)(2), 3553; *see United States v. Bullock*, 833 F. App'x 934, 935 (3d Cir. 2021) (per curiam) (granting motion for summary affirmance of denial of compassionate release after finding that district court did not abuse its discretion in considering the 3553(a) factors, including the inmate's substantial time remaining to be served). Thus, the pending conclusion of his sentence is also not a reason to grant Mr. Coutinho-Silva compassionate release.

### C. A Motion for Compassionate Release Is Not the Proper Vehicle to Challenge a Sentence or Conviction

Mr. Coutinho-Silva argues, in a motion that appears not to have met the § 3582(c)(1)(A) exhaustion requirement, that intervening caselaw has made his sentence unconstitutional, which he argues is an "extraordinary and compelling " reason for purposes of compassionate release. *See* Doc. No. 46.[3] Although the Supreme Court decision on this particular issue was not decided until after Mr. Coutinho-Silva's motion, the Court addresses it, nonetheless. In *United States v. Davis*, the Supreme Court held the residual clause of 18 U.S.C. § 924(c), defining a crime of violence, to be unconstitutionally vague. 18 U.S.C. § 924(c)(3)(B); *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). Still, "[a] motion for compassionate release is not the proper avenue to have raised such a challenge." *United States v. Canlas*, No. 22-1117, 2022 WL 2447108, at *2 (3d Cir. July 6, 2022) (per curiam); *see Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (explaining

---

[3] Mr. Coutinho-Silva's first motion for compassionate release, Doc. No. 46, appears to reference his subsequent petition under 28 U.S.C. § 2255. *See* Doc. No. 46, at 2. The Court, however, construes *pro se* pleadings liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plus, the addition of this argument for an "extraordinary and compelling" reason, assuming Mr. Coutinho-Silva meant to make it, does not alter the outcome.

8

that a petition under 28 U.S.C. § 2255 is "the presumptive means by which federal prisoners can challenge their convictions or sentences" for constitutional violations). Thus, even if it had been made in a properly exhausted motion, this argument is not an "extraordinary and compelling" reason to grant Mr. Coutinho-Silva compassionate release.

### D. Mr. Coutinho-Silva's Generalized Fear of COVID-19 Is Not an Extraordinary and Compelling Reason for his Release

Mr. Coutinho-Silva also asserts a generalized fear of COVID-19 and becoming infected with COVID-19 in another motion that does not appear to be administratively exhausted.

To demonstrate an "extraordinary and compelling" reason sufficient to qualify for compassionate release, a prisoner must show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii).

Mr. Coutinho-Silva, however, does not have any serious physical or medical condition that diminishes his ability to care for himself while in prison, even given the risk of a COVID-19 infection. In fact, Mr. Coutinho-Silva's medical record shows a healthy 40-year-old who is not taking any medication.

Plus, Mr. Coutinho-Silva has also been vaccinated against the COVID-19 virus, having received his first dose of the Moderna vaccine on March 10, 2021, and his second dose on April 8, 2021. The Moderna vaccine, which Mr. Coutinho-Silva received, has been documented as highly effective against COVID-19 and identified variants. *See, e.g., COVID-19 Study Shows mRNA Vaccines Reduce Risk of Infection by 91 Percent for Fully Vaccinated People*, Centers for Disease Control & Prevention (June 7, 2021), https://www.cdc.gov/media/releases/2021/p0607-mrna-reduce-risks.html (last visited Aug. 8, 2022). The widespread availability of COVID-19

9

vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021).

Because Mr. Coutinho-Silva has no medical conditions that place him at any increased risk of developing a severe case of COVID-19 and because he is now vaccinated, he would not have demonstrated any "extraordinary and compelling" reason for his release on this basis either, even if he had made such an argument in a properly exhausted motion. *Cf. United States v. Waters*, No. 12-cr-295-2, 2022 WL 874943, at *3 (E.D. Pa. Mar. 2, 2022).

### E. Mr. Coutinho-Silva's Alleged Denial of Medical Care Is Not an Extraordinary and Compelling Reason for his Release

Mr. Coutinho-Silva also claims in a non-exhausted motion that he is being denied medical care for a variety of medical maladies that are not life-threatening, including allergies and lower back pain. Construed as a claim that these medical conditions themselves are an extraordinary and compelling reason for his release, it fails for the same reason explained just above—these are not the type of serious medical conditions that would jeopardize his ability to care for himself while incarcerated. Construed as a claim that he is being held in unconstitutional conditions of confinement, a motion for compassionate release is not the proper vehicle to bring such a claim. *See Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir. 2002) (explaining that a challenge to a condition of confinement "is a challenge properly brought under § 1983"); *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 99 n.3 (3d Cir. 2008). Thus, similar to Mr. Coutinho's challenge to his sentence, a motion for compassionate release, even one that has been administratively exhausted, is an improper way to raise such a claim and does not constitute an "extraordinary and compelling" reason for his release.

### III. The Sentencing Factors Also Counsel Strongly Against Mr. Coutinho-Silva's Release

Even if Mr. Coutinho-Silva had demonstrated an extraordinary and compelling reason for his early release in any of his exhausted motions, which he has not, the sentencing factors all counsel strongly against Mr. Coutinho-Silva's early release. Mr. Coutinho-Silva's sentence of 207 months reflects the seriousness of his offense. 18 US.C. § 3553(a)(2)(A). Mr. Coutinho-Silva pled guilty to a robbery, during which he brandished and fired a handgun, shooting a bystander in the chest and nearly killing him. Furthermore, Mr. Coutinho-Silva has had numerous disciplinary infractions during his time at USP Florence ADMAX, including fighting with other inmates and possession of dangerous weapons, alcohol, and drugs. *See* Doc. No. 66, at 6–13. At the time he committed the acts underlying his present imprisonment, he was on probation for other similar conduct. Thus, his imprisonment protects the public from further such conduct that might endanger others. 18 U.S.C. § 3553(a)(2)(C). In addition, Mr. Coutinho-Silva's imprisonment affords deterrence, both general and specific, against future similar criminal conduct. *Id.* § 3553(a)(2)(B). Mr. Coutinho-Silva claims that he has "found God" during his time in prison. *See, e.g.*, Doc. No. 63, at 1. While the Court may consider a prisoner's rehabilitation and the Court is pleased Mr. Coutinho-Silva feels that he has experienced personal growth during his time incarcerated, that is not a reason in and of itself to grant early release.

### CONCLUSION

For the foregoing reasons, the Court denies each of Mr. Coutinho-Silva's motions for compassionate release. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE